**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **BERNICE EBLING**, |
| *Plaintiff*, |
| v. |
| **UNITED STATES DEPARTMENT OF JUSTICE**, |
| *Defendant*. |

Civil Action No. 10-00914 (CKK)

**MEMORANDUM OPINION**
(July 11, 2011)

Plaintiff Bernice Ebling brings this action against the United States Department of Justice (the "DOJ") under the Freedom of Information Act ("FOIA"). Presently before the Court is the DOJ's [9] Motion to Dismiss, or Alternatively, for Summary Judgment ("Motion for Summary Judgment"). Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the motion will be granted-in-part and denied-in-part.

## I. OVERVIEW

> **waiver** (**way**-vər), *n*. (17c) **1.** The voluntary relinquishment or abandonment — express or implied — of a legal right or advantage . . . . The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it.
>
> BLACK'S LAW DICTIONARY 1717 (9th ed. 2009).

In late 2009 and early 2010, Ms. Ebling filed a series of FOIA requests with two agencies under the auspices of the DOJ—namely, the Executive Office for United States Attorneys (the "EOUSA") and the Federal Bureau of Investigation (the "FBI"). From both the EOUSA and the FBI, she sought records concerning the criminal investigation and prosecution of William S. Price, who is alleged to be Ms. Ebling's nephew. From the FBI only, she also sought records

concerning the participation of Tami Lynn Price, who is alleged to be Mr. Price's former spouse, in the criminal investigation and prosecution of Mr. Price.

The EOUSA and the FBI refused to process Ms. Ebling's requests for records relating to Mr. Price. As grounds, they cited the terms of Mr. Price's plea agreement, in which he waived his right to use either FOIA or the Privacy Act of 1974 ("PA") as a means of obtaining records concerning his criminal case. Even though Ms. Ebling was not a party to that agreement, the EOUSA and the FBI claimed that the FOIA/PA waiver in Mr. Price's plea agreement presented an absolute bar to her efforts to obtain records concerning the criminal investigation and prosecution of Mr. Price. Before this Court, the DOJ defends the EOUSA and the FBI's actions on the same basis. In essence, the DOJ maintains that Ms. Ebling's requests are a subterfuge for circumventing the FOIA/PA waiver in Mr. Price's plea agreement.

In contrast, the FBI actually processed Ms. Ebling's requests for records relating to Ms. Price. However, it concluded that the responsive records that were located were all exempt from disclosure. Before this Court, the DOJ defends the FBI's decision on another basis entirely. Here, the DOJ contends that Ms. Ebling failed to exhaust her administrative remedies because she did not file an administrative appeal in accordance with the DOJ's regulations.

The DOJ's Motion for Summary Judgment will be granted-in-part and denied-in-part. With respect to Ms. Ebling's requests for records relating to Mr. Price, the EOUSA and the FBI improperly relied upon the FOIA/PA waiver in Mr. Price's plea agreement as a reason for refusing to process Ms. Ebling's requests. *See infra* Part VI.A. Ms. Ebling simply is not a party to that agreement and, as a result, it cannot be enforced against her. *See id.* Ms. Ebling has an independent right to request records under FOIA, and Mr. Price could not, and did not,

unilaterally waive that right merely by executing his plea agreement. *See id.* Therefore, the Court will deny the DOJ's Motion for Summary Judgment with respect to Ms. Ebling's requests relating to Mr. Price.

Meanwhile, the Court agrees with the DOJ that Ms. Ebling has failed to fully exhaust her administrative remedies with respect to her requests relating to Ms. Price. As an initial matter, Ms. Ebling has failed to come forward with enough evidence to create a genuine dispute that she ever filed an administrative appeal. *See infra* Part IV.B. Moreover, even crediting Ms. Ebling's allegations that she attempted to file an administrative appeal, it is clear that she did not do so in accordance with the DOJ's regulations. *See id.* Therefore, the Court will grant the DOJ's Motion for Summary Judgment with respect to Ms. Ebling's requests relating to Ms. Price.

## II. PRELIMINARY MATTERS

Although styled in the alternative as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,[1] the DOJ's motion plainly turns upon the consideration of materials outside the scope of the pleadings. Indeed, in the course of briefing the motion, both parties effectively treat the motion as one for summary judgment. For her part, Ms. Ebling does not suggest that she has been deprived "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In fact, in opposition to the DOJ's motion, Ms. Ebling references, and relies heavily upon, materials outside the scope of the pleadings. Accordingly, the Court shall treat the motion solely as one for summary judgment.

---

[1] On occasion, the DOJ erroneously cites to Rule 12(b)(6), but because the pleadings in this action are closed, the DOJ's motion would actually arise under Rule 12(c).

# III. FACTUAL BACKGROUND

William S. Price was indicted in the United States District Court for the Western District

of Missouri on June 28, 2006, charged with five counts relating to the possession and production

of child pornography.  *See* Indictment, *United States v. Price*, Criminal Action No. 5:06-cr-

06012-NKL-1 (W.D. Mo. June 28, 2006), ECF No. [5].  On March 22, 2007, after reaching a

plea agreement, Mr. Price pleaded guilty to one count of production of child pornography and

one count of receipt of child pornography.  *See* J. in a Criminal Case, *United States v. Price*,

Criminal Action No. 5:06-cr-06012-NKL-1 (W.D. Mo. Oct. 9, 2008), ECF No. [94].  On October

8, 2008, he was sentenced to a total term of imprisonment of 600 months, to be followed by

lifetime supervised release.  *Id.* at 2.  Subsequently, the sentence and the judgment were affirmed

by the United States Court of Appeals for the Eighth Circuit.  *See United States v. Price*, 326 F.

App'x 985 (8th Cir.), *cert. denied*, __ U.S. __, 130 S. Ct. 294 (2009).  Recently, Mr. Price's

petition for post-conviction relief was denied by the district court.  *See Price v. United States*,

Civil Action No. 5:10-cv-06120-NKL, 2011 WL 1357498 (W.D. Mo. Apr. 11, 2011).  Mr.

Price's appeal of that decision remains pending.

### A.    *Mr. Price's Plea Agreement*

Of particular relevance to this action, Mr. Price's guilty plea in his criminal case was

secured through a formal plea agreement.  *See* Pl.'s Stmt. of Genuine Issues, Pursuant to Local

Rule 7(h) ("Pl.'s Stmt."), ECF No. [10], Ex. D (Plea Agreement ("Plea Agmt.")).[2]  The parties to

---

[2]  A copy of the plea agreement is attached to Ms. Ebling's opposition papers.  Even though Mr. Price's plea agreement is the centerpiece of the DOJ's motion, the DOJ failed to include a copy with its moving papers.  Where, as here, a party contends that it is entitled to judgment as a matter of law on the basis of documentary evidence, it should go without saying that it is prudent to introduce that documentary evidence into the record for the Court's

that agreement are described as follows:

> **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri . . . and the defendant, William S. Price ("the defendant"), represented by John Gromowsky, Criminal Justice Act appointed counsel.
>
> The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

*Id.* ¶ 1. Consistent with this description, the agreement was signed by only three individuals—an Assistant United States Attorney, Mr. Price, and Mr. Price's attorney. *Id.* at 20.

For purposes of this FOIA action, the operative provision of the plea agreement provides:

> **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

---

consideration. Apparently by way of explanation for its failure, the DOJ states that the plea agreement was filed under seal in Mr. Price's criminal case. *See* Def.'s Stmt. of Material Facts as to Which There Is No Genuine Issue, Pursuant to Local Rule 7(h), ECF No. [9-1], at 2 n.3. But that is not a valid excuse. This Court, like any other, has procedures allowing for the submission of documents under seal. *See* LCvR 5.1(j). Nonetheless, the Court observes that Mr. Price's plea agreement, which was filed by Ms. Ebling on the public docket, contains potentially sensitive information about the factual basis for Mr. Price's guilty plea, including, but not limited to, facts that touch upon the identity of one of the minor victims of Mr. Price's criminal conduct. Out of an abundance of caution, the Court will direct the Clerk of the Court to temporarily maintain the plea agreement under seal until and including Friday, July 29, 2011, in order to afford any interested party an opportunity to file a motion to seal all or part of its contents. Any such motion shall, at a minimum, be made in accordance with the Local Rules of this Court and address each of the factors set forth in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). If a motion is not filed by the designated date, the Court will direct the Clerk of the Court to unseal the plea agreement.

Pl.'s Stmt. Ex. D (Plea Agmt.), ¶ 16. It is this FOIA/PA waiver that the EOUSA and the FBI later relied upon in denying Ms. Ebling's FOIA requests relating to Mr. Price.

**B.      *Request No. 1: Ms. Ebling's Request to the EOUSA for Records Relating to Mr. Price (Administrative Control No. 09-4676)***

By letter dated December 31, 2009, Ms. Ebling submitted a FOIA request to the EOUSA seeking records concerning Mr. Price ("Request No. 1"). *See* Pl.'s Stmt. Ex. B (Ltr. from B. Ebling to the EOUSA dated Dec. 31, 2009); *see also* Decl. of John F. Boseker ("Boseker Decl."), ECF No. [9-4], ¶ 6.[3] In the letter, Ms. Price requests the following records regarding Mr. Price:

1.      printouts of the search screen displays encountered while performing a search of the Legal Information Office Network System (LIONS), as well as the indices and the records responsive to the search;

2.      printouts of the search screen displays encountered while performing a search of the Tracking Assistance for the Legal Office Network (TALON), as well as the indices and the records responsive to the search;

3.      printouts of the search screen displays and indices encountered while performing a search of any other database searched in response to this request;

4.      any and all records of communication, regardless of form or format, involving AUSA Cynthia Phillips/Cordes, Special

_____

[3] While the DOJ concedes that the EOUSA received Ms. Ebling's December 31, 2009 letter, it failed to include a copy with its moving papers. By way of explanation, the DOJ avers that Ms. Ebling's December 31, 2009 letter is a "duplicate" and "identical in substance" to a letter she sent to the EOUSA on or about December 4, 2009. Boseker Decl. ¶ 6. Although the two letters are indeed very similar, they are not identical. Whereas Ms. Ebling's December 4, 2009 letter erroneously requested records concerning "the undersigned," her December 31, 2009 corrected the mistake to clarify that her request only sought records concerning Mr. Price. *Compare* Boseker Decl. Ex. A (Ltr. from B. Ebling to the EOUSA dated Dec. 4, 2009), *with* Pl.'s Stmt. Ex. B (Ltr. from B. Ebling to the EOUSA dated Dec. 31, 2009). Because only the December 31, 2009 letter is referenced in Ms. Ebling's Complaint, *see* Compl., ECF No. [1], ¶ 8, the Court shall treat that letter as the operative request.

> > Agent Kurt Lipanovich, or any other person in which the
> > subject is mentioned or referred;

> 5.    any and all records at the Kansas City United States
>       Attorney's Office (USAO) or any other USAO, whether or
>       not such records have been uploaded to EOUSA, including
>       search screen displays and indices encountered while
>       performing the search for responsive records.

Pl.'s Stmt. Ex. B (Ltr. from B. Ebling to the EOUSA dated Dec. 31, 2009), at 1. Attached to Ms.

Ebling's letter was a Certification of Identity and Authorization to Release Information to

Another Person from Mr. Price, indicating that he authorized the release of records pertaining to

him to Ms. Ebling. *Id.* at 2.

By letter dated January 7, 2010, the EOUSA notified Ms. Ebling that it had received her

Request No. 1.[4] *See* Boseker Decl. Ex. B (Ltr. from the EOUSA to B. Ebling dated Jan. 7, 2010),

at 1. Subsequently, the EOUSA forwarded the request to the United States Attorney's Office for

the Western District of Missouri to search for responsive records. *Id.* ¶ 8. On January 26, 2010,

that office informed the EOUSA that Mr. Price's plea agreement included a FOIA/PA waiver.

*Id.* ¶ 9. By letter dated April 13, 2010, the EOUSA denied Ms. Ebling's Request No. 1. *See*

Boseker Decl. Ex. C (Ltr. from the EOUSA to B. Ebling dated Apr. 13, 2010), at 1. By way of

explanation for its decision, the EOUSA stated:

> > Pursuant to the filed Memorandum of Plea Agreement *you* executed
> > on March 22, 2007, *you* have waived all rights, whether asserted
> > directly or by a representative, to request or receive from any
> > department or agency of the United States any records pertaining to
> > the investigation or prosecution of this case . . . .

*Id.* (emphasis added; underlining omitted).

---

[4] While the Court will refer to Ms. Ebling's request as Request No. 1 for purposes of this
action, the administrative control number was 09-4676.

By letter dated April 22, 2010, Ms. Ebling filed an appeal of the EOUSA's denial of her

Request No. 1 with the DOJ's Office of Information Policy (the "OIP"), the office responsible for

adjudicating such appeals.  *See* Boseker Decl. Ex. D (Ltr. from B. Ebling to the OIP dated Apr.

22, 2010), at 1.  By letter dated June 14, 2010, the OIP upheld the EOUSA's initial denial of Ms.

Ebling's Request No. 1, providing as follows:

> EOUSA determined that under the terms of a signed plea agreement
> . . . , William Price had waived all rights to make any request or
> receive any records pursuant to the Freedom of Information Act
> concerning his criminal case.  This waiver applies to such FOIA
> requests that are submitted directly by Mr. Price as well as those
> submitted by a representative.  * * *  [F]or purposes of your request,
> the waiver of Mr. Price's FOIA and Privacy Act rights contained in
> his plea agreement is presumed to be valid, and EOUSA properly
> refused to process your request.

Boseker Decl. Ex. F (Ltr. from the OIP to B. Ebling dated June 14, 2010), at 1.

### C.     *Request No. 2: Ms. Ebling's Request to the FBI for Records Relating to Mr. Price (Administrative Control No. 1141512)*

By letters dated November 23, 2009 and November 27, 2009, Ms. Ebling submitted three

identical requests to the FBI (collectively, "Request No. 2"): one to the FBI's headquarters (the

"FBI-HQ"); a second to the FBI's Kansas City Field Office (the "FBI-KCFO"); and a third to the

FBI's St. Joseph Resident Agency (the "FBI-SJRA").  *See* Decl. of David M. Hardy ("Hardy

Decl."), ECF No. [9-5], Ex. A (Ltr. from B. Ebling to the FBI-HQ dated Nov. 23, 2009), Ex. B

(Ltr. from B. Ebling to the FBI-KCFO dated Nov. 23, 2009), & Ex. C (Ltr. from B. Ebling to the

FBI-SJRA dated Nov. 27, 2009).[5]  Each letter requested "any and all records" regarding Mr.

---

[5]  The three letters are coterminous in scope; for purposes of economy, the Court will cite
exclusively to Ms. Ebling's letter to the FBI-HQ.

Price, including, but not limited to, the following:[6]

1.  printouts of the search screen displays of the Universal Name Index (UNI) and General Indices, both main and reference, encountered while performing the requested search, as well as the records to which the indices point;

2.  printouts of the search screen displays of the ELSUR indices, both main and reference, encountered while performing the requested search, as well as the records to which the indices point;

3.  copies of all search slips, FD-160 indices search slips, where the search was conducted, the databases searched, when the search was conducted, and the search terms used, as well as all other records generated by performing the requested search;

4.  all documents in case file number 305C-KC-89543.

Hardy Decl. Ex. A (Ltr. from B. Ebling to the FBI-HQ dated Nov. 23, 2009), at 1. Ms. Ebling's

Request No. 2 was accompanied by a Certification of Identity and Authorization to Release

Information to Another Person from Mr. Price authorizing the release of records pertaining to

him to Ms. Ebling. *See id.* at 2.

The FBI acknowledged receipt of Ms. Ebling's Request No. 2.[7] *See* Hardy Decl. Ex. D

(Ltr. from the FBI to B. Ebling dated Jan. 4, 2010), at 1. The FBI consolidated Ms. Ebling's

three letters as a single request. *See id.*; Hardy Decl. Ex. G (Ltr. from the OIP to B. Ebling dated

---

[6] Although not material to the pending motion, the Court observes that Ms. Ebling's request to the FBI seeks "any and all records" concerning Mr. Price, and then sets forth an illustrative list of records. *See* Hardy Decl. Ex. A (Ltr. from B. Ebling to the FBI-HQ dated Nov. 23, 2009), at 1. In contrast, Ms. Ebling's comparable request to the EOUSA is less expansive, framed as seeking five specific categories of records concerning Mr. Price. *See* Pl.'s Stmt. Ex. B (Ltr. from B. Ebling to the EOUSA dated Dec. 31, 2009), at 1.

[7] While the Court will refer to Ms. Ebling's request as Request No. 2 for purposes of this action, the administrative control number was 1141512.

May 3, 2010), at 1.

By letter dated January 4, 2010, the FBI denied Ms. Ebling's Request No. 2. *See* Hardy

Decl. Ex. D (Ltr. from the FBI to B. Ebling dated Jan. 4, 2010), at 1. Like the EOUSA, the FBI

concluded that Ms. Ebling had waived her rights under FOIA "pursuant to the terms of [the] Plea

Agreement . . . that Mr. Price . . . entered into with the United States of America." *Id.*

By letter dated January 26, 2010, Ms. Ebling appealed the FBI's decision to the OIP. *See*

Hardy Decl. Ex. E (Ltr. from B. Ebling to the OIP dated Jan. 26, 2010), at 1. In so doing, Ms.

Ebling stated that she had "not waived any rights" and maintained that, regardless of the terms of

the agreement that Mr. Price signed, he could not "waive [the] rights granted [her]." *Id.*

By letter dated May 3, 2010, the OIP upheld the FBI's initial decision. *See* Hardy Decl.

Ex. G (Ltr. from the OIP to B. Ebling dated May 3, 2010), at 1. Explaining the basis for its

decision, the OIP stated:

> The FBI determined that under the terms of a signed plea agreement
> . . . , Mr. Price waived all rights to make any request or receive any
> records concerning his criminal case. Furthermore, the agreement
> covers not only requests made by Mr. Price himself, but anyone
> acting on his behalf. * * * [F]or purposes of your request, the waiver
> of Mr. Price's Freedom of Information Act and Privacy Act rights
> contained in his plea agreement is presumed to be valid, and the FBI
> properly refused to process your request.

*Id.*

### D.     *Request No. 3: Ms. Ebling's Request to the FBI for Records Relating to Ms. Price (Administrative Control No. 1143733)*

By letters dated February 8, 2010, Ms. Ebling submitted three identical requests to the

FBI-HQ, the FBI-KFCO, and the FBI-SJRA seeking records relating to Tami Lynn Price

(collectively, "Request No. 3").[8]  *See* Hardy Decl. Ex. H (Ltr. from B. Ebling to the FBI-HQ

dated Feb. 8, 2010), Ex. I (Ltr. from B. Ebling to the FBI-KFCO dated Feb. 8, 2010), & Ex. J

(Ltr. from B. Ebling to the FBI-SJRA dated Feb. 8, 2010).[9]  For reasons that will soon become

clear, the precise contours of Ms. Ebling's Request No. 3 are not material to the pending motion.

For present purposes, suffice it to say that her request sought "any and all records" regarding Ms.

Price, and specifically enumerated eight categories of records requested.  *See* Hardy Decl. Ex. H

(Ltr. from B. Ebling to the FBI-HQ dated Feb. 8, 2010), at 1-2.  Each of Ms. Ebling's letters was

accompanied by a Certification of Identity and Authorization to Release Information to Another

Person from Ms. Price authorizing the release of records pertaining to her to Ms. Ebling.  *See id.*

at 3.

    The FBI acknowledged receipt of Ms. Ebling's Request No. 3.[10]  *See* Hardy Decl. Ex. K

(Ltr. from the FBI to B. Ebling dated Feb. 28, 2010), at 1.  All three letters were consolidated and

treated as a single request.  *See id.*

    By letter dated February 28, 2010, the FBI denied Ms. Ebling's Request No. 3 in its

entirety.  *See* Hardy Decl. Ex. K (Ltr. from the FBI to B. Ebling dated Feb. 28, 2010), at 1.  As

grounds for its decision, the FBI stated that the material requested "is located in an investigative

---

    [8]  According to the DOJ, Ms. Price is Mr. Price's former spouse, though the evidence
relied upon for this assertion is almost certainly inadmissible hearsay.  *See* Hardy Decl. at 11 n.4
("I have been informed by the [Special Agent] for this case that Tami Lynn Price is William
Steven Price's ex-wife.").

    [9]  The three letters are coterminous in scope; for purposes of economy, the Court will cite
exclusively to Ms. Ebling's letter to the FBI-HQ.

    [10]  While the Court will refer to Ms. Ebling's request as Request No. 3 for purposes of
this action, the administrative control number was 1143733.

11

file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A)." *Id.* Ms. Ebling was

advised of her right to appeal the FBI's decision:

> You may file an appeal by writing the Director, Office of Information
> Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW,
> Suite 11050, Washington, D.C. 20530-0001. Your appeal must be
> received by OIP within sixty (60) days from the date of this letter in
> order to be considered timely. The envelope and the letter should be
> clearly marked "Freedom of Information [Act] Appeal."

*Id.* As a result, Ms. Ebling had until April 29, 2010 to submit a timely appeal of the FBI's denial

of Request No. 3. However, the OIP has twice reviewed its electronic tracking system of

administrative appeals, and has no record of ever receiving an appeal from Ms. Ebling

concerning Request No. 3. *See* Decl. of Priscilla T. Jones ("Jones Decl."), ECF No. [9-6], ¶ 2;

Decl. of Nakeitha D. Gilbert ("Gilbert Decl."), ECF No. [11-1], ¶ 2.

## IV.  PROCEDURAL BACKGROUND

On June 2, 2010, Ms. Ebling, proceeding *pro se*, commenced this action under FOIA.

*See* Compl. for Injunctive Relief, ECF No. [1].[11]  On September 22, 2010, the DOJ filed its

Answer. *See* Answer, ECF No. [6].

Subsequently, the Court set a briefing schedule for dispositive motions. *See* Order (Sept.

24, 2010), ECF No. [8].  In so doing, the Court advised Ms. Ebling of her obligations in

responding to the DOJ's anticipated motion. *Id.* at 2 (citing *Fox v. Strickland*, 837 F.2d 507

(D.C. Cir. 1988); *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992)).

---

[11]  Ms. Ebling also cites in passing to the PA in her Complaint, but that statute "give[s]
parties access only to their own records." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1121
(D.C. Cir. 2007) (citing 5 U.S.C. § 552a(d)(1)).  In this case, because each of Ms. Ebling's
requests sought records pertaining to third parties, the PA has no applicability.  Wisely, Ms.
Ebling has not relied upon the PA in opposition to the pending motion.

The parties complied with the schedule set by the Court. On November 4, 2010, the DOJ filed its opening memorandum. *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, or Alternatively, for Summ. J. ("Def.'s Mem."), ECF No. [9-2]. On December 17, 2010, Ms. Ebling filed a timely opposition. *See* Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss, or Alternatively, for Summ. J. ("Pl.'s Opp'n"), ECF No. [10]. On January 7, 2011, the DOJ filed a timely reply. *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss, or Alternatively, for Summ. J. ("Def.'s Reply"), ECF No. [11]. The motion is now fully briefed and ripe for adjudication.

## V. LEGAL STANDARD

Congress enacted FOIA to introduce transparency into government activities. *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993). In reviewing motions for summary judgment in this context, the district court must conduct a *de novo* review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Summary judgment is proper when the pleadings, the discovery materials

on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.* In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

While "[a]ll pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), pleadings filed by a party proceeding *pro se* must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation marks omitted). For example, where a *pro se* party has filed multiple submissions, the district court must generally consider those filings together and as a whole. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). However, even with the liberality afforded *pro se* pleadings, the district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 553 F.3d 669, 667 (D.C. Cir. 2008) (quotation marks omitted).

## VI. DISCUSSION

The Court's discussion proceeds in two parts. The Court will first explain why the EOUSA and the FBI improperly refused to process Ms. Ebling's Requests Nos. 1 and 2 based on the FOIA/PA waiver in Mr. Price's plea agreement. *See infra* Part VI.A. Thereafter, the Court will explain why Ms. Ebling's claims relating to Request No. 3 are subject to dismissal because Ms. Ebling has failed to exhaust her administrative remedies. *See infra* Part VI.B.

### A. The EOUSA and the FBI Improperly Refused to Process Ms. Ebling's Requests Nos. 1 and 2 Based on the FOIA/PA Waiver in Mr. Price's Plea Agreement

In this case, the DOJ's defense of the EOUSA's denial of Request No. 1 and the FBI's denial of Request No. 2 rises and falls on Mr. Price's plea agreement. Distilled to its essence, the DOJ's argument is this: (i) Mr. Price entered into a valid and binding plea agreement; (ii) under the terms of that agreement, Mr. Price waived his right to make a FOIA request pertaining to the investigation or prosecution of his criminal case either on his own behalf or "by a representative"; (iii) in requesting records pertaining to Mr. Price, Ms. Ebling is acting as Mr. Price's "representative"; (iv) therefore, Ms. Ebling's FOIA requests are barred by the plea agreement. *See* Def.'s Mem. at 9-11; Def.'s Reply at 4-6. For the reasons set forth below, the Court finds the argument to be without merit.

### 1. Ms. Ebling Has a Statutory Right to Request Records Under FOIA, Independent of Any Right that Mr. Price May Have Waived

Congress deliberately conferred the right to make a FOIA request upon "any person," 5 U.S.C. § 552(a)(3)(A), a term that is defined broadly to include any individual or organization other than a federal agency, *id.* § 551(2). Consistent with this broad "any person" standard, "the identity of the requesting party [generally] has no bearing on the merits of his or her FOIA

request." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989).[12] The reason is simple: the statute's exclusive concern is with what must, and what must not, be made public. *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989). For this reason, whether disclosure is required turns on the nature of the records requested, and requestors are not required to explain who they are or why they seek information. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

In this case, the DOJ alleges that Ms. Ebling is a relative of Mr. Price (specifically, his paternal aunt) and contends that, in pursuing her FOIA requests, Ms. Ebling has been acting on Mr. Price's behalf. *See* Def.'s Mem. at 9-11; Def.'s Reply at 4-6. Even assuming that is the case, it is, at least for purposes of FOIA, irrelevant. Under the statute, Ms. Ebling's identity is "of no significance," *Swan v. Secs. & Exch. Comm'n*, 96 F.3d 498, 499 (D.C. Cir. 1996), and her rights are no different than those that might be asserted by any other person. Ms. Ebling has a statutory right to make a FOIA request, and that right exists independently of whatever right Mr. Price may have once had to do the same.

### 2. Ms. Ebling is Not Bound by the Plea Agreement and it Does Not Effectuate a Waiver of Her Independent Statutory Rights

In light of the foregoing, the DOJ's entire argument hinges on the premise that Mr. Price's plea agreement binds Ms. Ebling or somehow effectuated a waiver of Ms. Ebling's rights under FOIA. That premise is both unproven and untenable.

True, as the DOJ suggests, "in the absence of an affirmative indication that Congress

---

[12] The principal exception is where "the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege." *Reporters Comm. for Freedom of Press*, 489 U.S. at 771.

intended to preclude or to limit the waiver of statutory protections . . . voluntary agreements to waive [those] protections are presumptively enforceable." *United States v. Burch*, 156 F.3d 1315, 1321 (D.C. Cir. 1998) (citing *United States v. Mezzanatto*, 513 U.S. 196, 201-02 (1995)), *cert. denied*, 526 U.S. 1011 (1999). Consistent with that proposition, several courts have held that a FOIA/PA waiver in a criminal defendant's plea agreement may be enforced against the criminal defendant. *See, e.g.*, *Caston v. Exec. Office for U.S. Attorneys*, 572 F. Supp. 2d 125, 129 (D.D.C. 2008); *Boyce v. United States*, Civil Action No. 1:08cv535, 2010 WL 2691609, at *1 (W.D.N.C. July 6, 2010); *Patterson v. Fed. Bureau of Investigation*, Civil Action No. 3:08cv186, 2008 WL 2597656, at *2 (E.D. Va. June 27, 2008). Whatever the merits of that particular outcome, that is not what the DOJ is attempting to do in this case. Here, the DOJ seeks to invoke a FOIA/PA waiver in a criminal defendant's plea agreement against a third party who is alleged to be a relative of the criminal defendant. Without some indication that the third party is bound by the terms of the plea agreement, this is patently impermissible.

Plea agreements are essentially contracts like any other and are subject to general principles of contract interpretation. *See United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir.), *cert. denied*, 516 U.S. 970 (1995). It is a fundamental and unobjectionable principle that a contract cannot bind a non-party—*i.e.*, someone who has not assented to be bound to its terms. *Equal Empl. Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). In this case, no fact-finder could reasonably conclude that Ms. Ebling is bound by the terms of Mr. Price's plea agreement. By its plain language (and obvious context) there are only two parties to the plea agreement—Mr. Price and the United States Attorney's Office for the Western District of Missouri. *See* Pl.'s Stmt. Ex. D (Plea Agmt.), ¶ 1. Ms. Ebling is not a party to Mr. Price's plea

agreement, and the DOJ could not credibly contend otherwise.

Entirely consistent with this understanding, the FOIA/PA waiver in Mr. Price's plea agreement provides only that "[t]he defendant waives all of *his* rights . . . to request or receive . . . records pertaining to the investigation or prosecution of his case." Pl.'s Stmt. Ex. D (Plea Agmt.), ¶ 16 (emphasis added). It does not purport to waive the rights of any third parties, including those of Ms. Ebling. Nor could it. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)). As such, waiver is within the control of the party who holds the right. That is, one person's waiver cannot, on its own, work a waiver of another person's independent legal right. *Cf. United States v. Wilson*, 26 F.3d 142, 151 (D.C. Cir. 1994), *cert denied*, 514 U.S. 1051 (1995). In this case, the mere fact that Mr. Price elected to waive his rights under FOIA cannot constitute a basis for concluding that Ms. Ebling did the same. There is no evidence— none—that Ms. Ebling ever intended to relinquish or abandon her rights under FOIA. The reason is simple: Ms. Ebling is not a party to the agreement. The plea agreement presents no bar to Ms. Ebling's FOIA requests.[13]

The Court notes additionally that the question of whether Ms. Ebling is acting as Mr. Price's "representative" in pursuing her FOIA requests is, quite simply, irrelevant to this action. Pursuant to his plea agreement, Mr. Price "waive[d] all of *his* rights, whether asserted directly or

---

[13] Indeed, the DOJ's insistence that Mr. Price's plea agreement presents an absolute bar to her attempts to secure records pertaining to Mr. Price's criminal case is belied by the fact that the EOUSA did, in fact, produce some records to Ms. Ebling—namely, the plea agreement. *See* Pl.'s Ex. D (Ltr. from the EOUSA to B. Ebling dated Apr. 13, 2010). Given the DOJ's stated position that Ms. Ebling is not entitled to *any* records pertaining to Mr. Price's criminal case, this production, limited though it may be, is inexplicable.

by a representative, to request or receive . . . any records pertaining to the investigation or prosecution of [his] case." Pl.'s Stmt. Ex. D (Plea Agmt.), ¶ 16 (emphasis added). That contractual promise runs to the government only from Mr. Price, and him alone. Because the plea agreement does not bind Ms. Ebling, it cannot be enforced against her. But the DOJ is not without a remedy. To the extent that it genuinely believes that Ms. Ebling is acting as Mr. Price's "representative," it may seek to enforce the terms of the plea agreement *against Mr. Price* in a court of competent jurisdiction. In this action, the Court cannot condone the DOJ's attempts to wield Mr. Price's plea agreement as a sword to defeat Ms. Ebling's FOIA requests.

In any event, despite its insistence that "[i]t is clear that Plaintiff is acting as Mr. Price's representative," Def.'s Mem. at 11, the DOJ has fallen woefully short of establishing that the record is "so one-sided" that it is entitled to judgment as a matter of law on that question. *Liberty Lobby*, 477 U.S. at 251-52. Ms. Ebling has steadfastly denied that she is "acting as the agent or representative of any other person" and maintains that her requests are animated purely by her "own personal interest." Decl. of Bernice Ebling, ECF No. [10-1], ¶ 10. Balanced against this, the DOJ avers that Ms. Ebling is Mr. Price's paternal aunt and underscores that each of Ms. Ebling's requests were accompanied by a Certification of Identity and Authorization to Release Information to Another Person executed by Mr. Price authorizing the release of records pertaining to him to Ms. Ebling.[14] *See* Def.'s Mem. at 11. Despite the DOJ's apparent belief to

---

[14]  Both of these factual allegations are undisputed. While the DOJ supports the first allegation only with what is almost certainly inadmissible hearsay, *see* Hardy Decl. ¶ 29 ("I have been informed by the [Special Agent] who investigated Price's child pornography allegations that plaintiff, Bernice Ebling, is William Price's paternal aunt."), Ms. Ebling does not contest that she is, in fact, Mr. Price's paternal aunt, *see* Pl.'s Opp'n at 8. Accordingly, for purposes of resolving the pending motion, the Court will assume this to be the case. *See* Fed. R. Civ. P. 56(e)(2). The second allegation is established by clear documentary evidence, as each of Ms. Ebling's requests

the contrary, this is far from definitive evidence that Ms. Ebling is "acting in collusion" with Mr. Price. Def.'s Reply at 6. Mr. Price's certifications are mere privacy waivers, the condition precedent to an agency's release of private information pertaining to him to any third party. Absent such certifications, Ms. Ebling, like any other FOIA requestor, would surely have encountered substantial difficulties obtaining any records responsive to her requests.

In conclusion, the Court reiterates for emphasis that whether or not Ms. Ebling is acting as Mr. Price's "representative" is only relevant if the government wants to enforce the FOIA/PA waiver in Mr. Price's plea agreement against Mr. Price. It has no bearing upon Ms. Ebling's FOIA requests. Therefore, the Court shall deny the DOJ's Motion for Summary Judgment insofar as it seeks dismissal of these claims.

In fact, in light of the Court's conclusion that the DOJ's proffered justification for the EOUSA and the FBI's refusal to process Ms. Ebling's Requests Nos. 1 and 2 is without merit, it appears that Ms. Ebling may be entitled to judgment as a matter of law in her favor. However, because Ms. Ebling has not cross-moved for summary judgment, the Court cannot order the DOJ to begin processing these requests in the posture that this case now stands. Therefore, the Court will require the DOJ to show cause, on or before Friday, July 29, 2011, as to why the Court should not grant partial summary judgment in Ms. Ebling's favor based on its decision today and direct the DOJ to immediately begin processing Requests Nos. 1 and 2. *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.").

---

for records relating to Mr. Price were accompanied by a Certification of Identity and Authorization to Release Information to Another Person from Mr. Price.

**B.      Ms. Ebling Has Not Exhausted Her Administrative Remedies With Respect to Request No. 3**

Exhaustion of administrative remedies is not a jurisdictional requirement under FOIA. *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003). Nonetheless, it is a jurisprudential consideration, *id.*, and the failure to file a timely administrative appeal as specified by an agency's FOIA regulations will generally preclude a future suit, *Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 676 (D.C. Cir. 2004) (*per curiam*). In this case, Ms. Ebling failed to exhaust her administrative remedies with respect to Request No. 3, through which she sought records from the FBI pertaining to Ms. Price.

On this point, the DOJ has introduced unrefuted evidence establishing that the OIP has no record of ever receiving an appeal from Ms. Ebling in connection with this particular request, *see* Jones Decl. ¶ 2; Gilbert Decl. ¶ 2, and in this context the evidence proffered by the DOJ is entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). True, Ms. Ebling purports to dispute the DOJ's contention, but her response is insufficient to create a genuine dispute. Specifically, Ms. Ebling alleges that she faxed a letter to the OIP appealing the FBI's initial denial of Request No. 3. *See* Pl.'s Stmt. Ex. P (Ltr. from B. Ebling to the OIP dated Mar. 15, 2010). However, the only support for her allegation that she actually sent the letter is a putative fax confirmation page, but that document is dated March 23, 2010—more than a week after the ostensible date of the letter. *See* Pl.'s Stmt. Ex. P (Fax Confirmation Page dated Mar. 23, 2010). *See id.* More to the point, the fax confirmation page nowhere evidences what was actually sent to the listed fax number. *See id.* In other words, there is nothing to link the letter and the fax confirmation page. Therefore, even crediting Ms. Ebling's allegation that, whatever she sent on March 23, 2010, she sent it to the

21

same fax number as her prior submissions to the OIP, there still is no basis for a reasonable fact-finder to conclude that what she sent was, in fact, a letter appealing her Request No. 3. Because the DOJ has introduced unrefuted evidence that it has no record of ever receiving an appeal from Ms. Ebling with respect to this request, the absence of affirmative evidence that would allow a reasonable fact-finder to find that what Ms. Ebling sent on March 23, 2010 was in fact a letter appealing her Request No. 3 is fatal to her position. *See Liberty Lobby*, 477 U.S. at 257. In short, her response is insufficient to create a genuine dispute.

However, there is a separate, and equally compelling, reason to find that Ms. Ebling has failed to exhaust her administrative remedies in connection with Request No. 3. Even crediting all of Ms. Ebling's allegations, they would, at best, suggest that she *faxed* an appeal letter to the OIP. However, the applicable DOJ regulations contemplate that appeal letters should be physically mailed to the OIP's offices in Washington, D.C. *See* 28 C.F.R. § 16.9(a). In this regard, the regulations advise that individuals seeking to appeal an adverse determination should "mark [their] appeal letter and the envelope 'Freedom of Information Act Appeal.'" *Id.* In this case, the FBI expressly informed Ms. Ebling of these requirements when it denied Request No. 3:

> You may file an appeal by writing the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information [Act] Appeal."

Hardy Decl. Ex. K (Ltr. from the FBI to B. Ebling dated Feb. 28, 2010), at 1. These requirements are not purely technical. Rather, they are designed to create a uniform and streamlined process to ensure that appeals are received and processed, and the DOJ is entitled to insist that requestors adhere to their strictures. Where, as here, a "request is not made in

accordance with [the agency's] published regulations, the FOIA claim is subject to dismissal for failure to exhaust administrative remedies." *Calhoun v. Dep't of Justice*, 693 F. Supp. 2d 89, 91 (D.D.C. 2010), *aff'd*, No. 10-5125, 2010 WL 4340370 (D.C. Cir. Oct. 19, 2010); *see also Pickering-George v. Registration Unit, DEA/DOJ*, 553 F. Supp. 2d 3, 5 (D.D.C. 2008); *Thorn v. United States*, Civil Action No. 04-1185 (RJL), 2005 WL 3276285, at *3 (D.D.C. Aug. 11, 2005). Therefore, the Court will grant summary judgment in the DOJ's favor insofar as it seeks dismissal of Ms. Ebling's claims relating to Request No. 3.

## VII. CONCLUSION

For the reasons set forth above, the Court will grant-in-part and deny-in-part the DOJ's [9] Motion for Summary Judgment. Specifically, the Court will grant the motion insofar as it seeks dismissal Ms. Ebling's claims relating to Request No. 3; however, the Court will deny the motion insofar as it seeks dismissal of Ms. Ebling's claims relating to Requests Nos. 1 and 2. Moreover, the Court will direct the DOJ to show cause, on or before Friday, July 29, 2011, as to why the Court should not grant summary judgment in Ms. Ebling's favor with respect to her claims based on Requests Nos. 1 and 2 and direct the DOJ to immediately begin processing those requests. An appropriate Order accompanies this Memorandum Opinion.


Date:   July 11, 2011


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge